**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | |
|---|---|
| NORDYNE, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 4:09CV0055 TCM |
| | ) |
| FLICK DISTRIBUTING, LLC, and | ) |
| THOMAS FLICK, | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM AND ORDER**

This matter is before the Court[1] on a motion to dismiss for improper venue and/or for transfer of venue to the United States District Court for the Eastern District of Louisiana ("motion to dismiss or transfer") filed by Flick Distributing, LLC ("Flick Distributing") and Thomas Flick ("Flick") (collectively referred to as Defendants) [Doc. 16] and Defendants' motion for oral argument on their motion to dismiss or transfer [Doc. 34]. Nordyne, Inc. ("Nordyne" or "Plaintiff") opposes these motions, and Defendants filed a reply in support of their motion to dismiss or transfer. The parties filed evidentiary materials, including affidavits, in support of their positions on the motion to dismiss or transfer.

**Background**

Nordyne manufactures and sells heating, ventilating and air conditioning products, replacement parts, and related products ("HVAC products"). (Compl. ¶ 9 [Doc. 1].) It is a Delaware corporation, with its principal place of business in St. Charles County, Missouri. (Id. at ¶ 1.)

---

[1] The case is before the undersigned United States Magistrate Judge by written consent of the parties. See 28 U.S.C. § 636(c).

Nordyne has no property, offices, or employees in Louisiana. (Brandt Dec. ¶ 17 [Doc. 28].) Additionally, Nordyne's documents relevant to the issues in this case are located in Missouri, and six witnesses identified by Nordyne live in this district and a nearby county, St. Clair County, in Illinois. (Schmidt Dec. ¶¶ 11, 12 [Doc. 27].) Nordyne briefly summarized the testimony of its six witnesses, all of whom are officers or employees of Nordyne, as addressing the nature of Nordyne's business, the nature of the relationship between Nordyne and Defendants, the nature of Nordyne's HVAC products, and the nature of the inventory held by Flick Distributing. (Id. ¶ 12.)

Flick is President and sole member of Flick Distributing; resides in Jefferson Parish, Louisiana; and has never resided in Missouri. (Flick Aff. ¶¶ 1, 2, 3 [Doc. 17-1].)

Flick Distributing, a Louisiana limited liability company, is a wholesale seller of HVAC equipment and replacement parts in southern Louisiana and Mississippi; is headquartered in Jefferson Parish, Louisiana; and has never made sales, provided services, or had offices, employees, bank accounts, or other property in Missouri. (Id. ¶¶ 2, 3.) Flick Distributing's documents relevant to the issues in this case are located in Louisiana, and its two witnesses, including Flick, are in Louisiana. (Id. ¶ 11.) The record does not contain a summary of Flick's testimony but does include his averment that travel to Missouri for trial "would represent a substantial burden both as a distraction to the business of Flick Distributing and [due to] the related out-of-pocket expenses." (Id. ¶ 12.) Flick also avers that the other witness is a person "who provides services and advice to" Defendants and who "cannot travel out of state" due to his need to care for his wife, who has multiple sclerosis. (Id. ¶ 11.)

Nordyne and Flick Distributing entered into three agreements (collectively referred to as Distribution Agreements) for Nordyne's sale of HVAC products to Flick Distributing for distribution

2

in Louisiana and Mississippi. (Id. ¶¶ 4, 7.) For convenience, the Court will refer to these Distribution Agreements as the Westinghouse Agreement,[2] the Mammoth Agreement,[3] and the Gibson Agreement.[4] Nordyne and Flick Distributing also entered into an earlier agreement through which

---

[2] The Westinghouse Agreement is titled "Nordyne Residential Distributor Agreement Westinghouse Brand" and is dated May 14, 2002. (Flick Aff. Ex. A [Doc. 17-1]; Brandt Dec. Ex. 2 [Doc. 28-2].) The Westinghouse Agreement contains no forum selection clause or clause setting forth what law governs the interpretation of any dispute arising out of the Agreement.

[3] The Mammoth Agreement is titled "Nordyne Mammoth Product Distributor Agreement" and is dated February 3, 2004. (Brandt Dec. Ex. 3 [Doc. 28-3].) In relevant part, the Mammoth Agreement sets forth a Governing Law provision, including a forum selection clause:

> Governing Law. Because the parties hereto do business in different jurisdictions, and because they both have contacts in Missouri, and because they wish to ensure that this Agreement is construed in accordance with their intentions, they agree that this Agreement shall be enforced, governed by and construed in accordance with the laws of the State of Missouri, without giving effect to the principles of conflict of laws thereof. . . . If any action is brought to enforce or interpret this Agreement, exclusive venue for such action shall be in the courts of the state of Missouri located in St. Louis County or the courts of the United States for the Eastern District of Missouri. The parties hereby irrevocably waive any objection which either may now or hereafter have to the laying of venue of any actions or proceedings arising out of or in connection with this Agreement brought in the courts referred to in the preceding sentence and hereby further irrevocably waive and agree not to plead or claim in any such court that any such action or proceeding brought in any such court has been brought in an inconvenient forum.

Section XVII of the Mammoth Agreement. (Id. at 9-10.)

[4] The Gibson Agreement is titled "Nordyne Gibson Brand Distributor Agreement" and is dated February 3, 2005. (Brandt Dec. Ex. 1 [Doc. 28-1].) The Gibson Agreement also contains a "Governing Law" provision that includes a forum selection clause identical to the one in the Mammoth Agreement:

> Governing Law. Because the parties hereto do business in different jurisdictions and have contacts with Missouri and because they wish to ensure that this Agreement is construed in accordance with their intentions, they agree that this Agreement shall be governed by, construed, interpreted and enforced in accordance with the laws of the State of Missouri, without giving effect to the principles of conflict of laws thereof. If any action is brought to enforce or interpret this Agreement, exclusive venue for

Nordyne agreed to sell HVAC products to Flick Distributing on credit ("Credit Agreement").[5] (Id. ¶ 17.) The last agreement relevant to the claims in this case is Flick's guaranty of debts and liabilities Flick Distributing owed to Nordyne ("Personal Guarantee").[6] (Brandt Dec. Ex. 5 [Doc. 28-5].) The parties' agreements "were formed in Missouri when they were last executed by [Nordyne] after

---

> such action shall be in the courts of the state of Missouri located in St. Louis County or the courts of the United States for the Eastern District of Missouri. The Parties hereby irrevocably waive any objection which either may now or hereafter have to the laying of venue of any actions or proceedings arising out of or in connection with this Agreement brought in the courts referred to in the preceding sentence and hereby further irrevocably waive and agree not to plead or claim in any such court that any such action or proceeding brought in any such court has been brought in an inconvenient forum.

Section XVII of the Gibson Agreement. (Id. at 7.)

[5] The Credit Agreement is dated April 16, 2002. (Brandt Dec. Ex. 4 [Doc. 28-4] .) The Credit Agreement provides in relevant part that

> For purposes of any lawsuit or cause of action which arises from or relates to this Agreement or the distribution relationship between the parties, [Flick Distributing] hereby waives the right to make any challenge to personal jurisdiction and or venue in any action filed by Nordyne, Inc. in federal or state court in the state of Missouri and [Flick Distributing] agrees to submit to the jurisdiction and venue of such courts.

(Id. at 2.)

The parties dispute whether this forum selection clause in the Credit Agreement is part of the later Westinghouse Agreement. (See Pl.'s Mem. Law Opp'n to Defs.' Mot. Dismiss or Transfer at 7-9 [Doc. 26]; Defs.' Reply at 1-3 [Doc. 32].) The Court will not now resolve this dispute. First, this dispute is not relevant to the issues presented by Defendants' motion to dismiss or transfer because the disputed forum selection clause designates this judicial district as a forum; so, the presence of the forum selection clause would not support dismissal for improper venue or transfer of venue. Second, the parties' Gibson Agreement and Mammoth Agreement, which are also relevant to the claims in this case, contain forum selection clauses designating this judicial district as a forum.

[6] This Personal Guarantee is titled "Limited Personal Guaranty" and is dated May 10, 2005. (Brandt Dec. Ex. 5 [Doc. 28-5].) This agreement does not have a forum selection clause.

[Defendants] had signed them."[7]  (Brandt Dec. ¶ 9 [Doc. 28].)

Pursuant to the parties' Agreements, Nordyne manufactured the HVAC products in and shipped them from Missouri (Brandt Dec. ¶ 12 [Doc. 28]) and Flick Distributing distributed those HVAC products in Louisiana and Mississippi.  Flick Distributing "took ownership of [Nordyne's] HVAC products in Missouri because the products were shipped FOB Missouri."  (Id. ¶¶ 4, 13.)  Flick Distributing "directed purchase orders and payments to [Nordyne] in Missouri," and Nordyne sent invoices from Missouri to Louisiana for Flick Distributing's purchases.  (Id. ¶¶ 14, 15.)  Flick Distributing still has approximately $1,400,000.00 in inventory of Nordyne's HVAC products located in Flick Distributing warehouses in Louisiana and Mississippi.  (Flick Aff. ¶¶ 3, 8, 9 [Doc. 17-1].)

During the parties' business relationship, Flick and other employees of Flick Distributing traveled to Missouri to discuss their relationship and performance under the Distribution Agreements, including visits to Missouri in February 2002, September 2004, and October 2008. (Id. ¶¶ 10, 11.)  The parties' business relationship deteriorated in late 2008.  (See, e.g., Brandt Dec. ¶ 18 [Doc. 28]; Flick Aff. ¶ 10 [Doc. 17-1].)  Nordyne filed this lawsuit in early 2009.

In Nordyne's breach of contract and account stated claims against Flick Distributing (Counts I through III of the Complaint), Nordyne seeks over $190,000 allegedly owed for HVAC products sold to and accepted by Flick Distributing under either the three Distribution Agreements and the Credit Agreement, or the invoices Nordyne issued to Flick Distributing, plus accrued interest and collection costs, including attorneys' fees.  (Compl. ¶¶ 34-52 and p. 10 [Doc. 1].)  In Count IV,

---

[7]  While Defendants acknowledge Plaintiff signed the parties' agreements in Missouri, Defendants note, without providing or referring to evidentiary support, that the Agreements were "substantially negotiated in Louisiana and signed by Flick in Louisiana in the presence of Nordyne's personnel."  (Defs.' Reply at 4 [Doc. 32].)

5

Nordyne alleges Flick is liable under the Personal Guarantee for amounts owed by Flick Distributing up to a total amount of $125,000, plus collection costs, attorneys' fees, interest, and costs. (Id. ¶¶ 53-57; and p. 10.) In Count V, Nordyne seeks a declaration that Missouri law applies to the Distribution and Credit Agreements, due either to the terms of those Agreements or to Missouri's choice of law rules, and Nordyne is not obligated under either the Distribution Agreements or Missouri law to repurchase the approximately $1.4 million worth of HVAC products inventory Flick Distributing still has. (Id. ¶¶ 59-67 and p. 10). If the Court finds that Louisiana law applies, then Nordyne seeks a declaration that what the parties refer to as Louisiana's Repurchase of Equipment by Wholesaler Act, La. Rev. Stat. 51:481 et seq. ("Repurchase Act" or "Act") does not apply or, if it does apply, either the HVAC products at issue here are not the type of equipment covered by § 481 of that Act or the terms of that Act bar Flick Distributing from invoking the Act due to Flick Distributing's failure to terminate the Distribution Agreements with proper written notice. (Id. ¶¶ 68-69 and p. 10).

Approximately one month after this lawsuit was filed, Defendants filed a lawsuit against Nordyne in the Eastern District of Louisiana (the Louisiana action) seeking, in Count I, monetary relief and injunctive relief based on Louisiana's Repurchase Act and, in Count II, a declaratory judgment that the Personal Guarantee was satisfied by Flick Distributing's payments exceeding the limits of the Personal Guarantee, and that, under the Repurchase Act, Nordyne is indebted to Flick Distributing in an amount exceeding the Personal Guarantee.[8] (Flick Aff. Ex. B ¶ 13 [Doc. 17-1].)

---

[8] Plaintiff urges the "first-to-file" rule supports venue in this judicial district. (Pl.'s Mem. Oppos. Defs.' Mot. Dismiss or Transfer at 9 [Doc. 26].) Defendants characterize Plaintiff's filing of this lawsuit as a "Race to Court." (Defs.' Reply at 3 [Doc. 32].) The Court will not address these arguments as they are not necessary to the Court's resolution of the issues presented by Defendants' motion to dismiss or transfer.

By stipulation, the parties agreed to stay the proceedings in the Louisiana action until this Court ruled on the motion to dismiss or transfer and, if this Court denied the motion, then Defendants here would dismiss their Louisiana action and have the opportunity to assert those claims as counterclaims in this action or, if this Court granted the motion, Nordyne would not appeal that decision and would assert its claims in this case as counterclaims in the Louisiana action. (Schmidt Dec. Ex. 3 ¶ 9 [Doc. 27-2].) The Louisiana action has been stayed and administratively closed until the resolution of the motion to dismiss or transfer pending in this case. (Exs. 1 and 2 to the April 1, 2009 Mem. of Filing [Doc. 33].)

**Discussion**

Defendants move to dismiss this action under Federal Rule of Civil Procedure 12(b)(3) on the ground venue is not proper here because a substantial part of the matters giving rise to the claims did not occur in Missouri for purposes of 28 U.S.C. § 1391(a)(2).[9] Nordyne disagrees, urging that a substantial part of the events giving rise to the claims in this case occurred in Missouri.

Under 28 U. S.C. § 1391(a)(2) venue in a diversity case such as this is proper in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." In deciding whether venue is proper under this statute, the only question is "whether the district the plaintiff chose ha[s] a substantial connection to the claim, whether or not other forums ha[ve] greater contacts." **Setco Enters. Corp. v. Robbins**, 19 F.3d 1278, 1281 (8th Cir. 1994); accord **Pecoraro**

---

[9] Defendants also argue venue here is improper under 28 U.S.C. § 1391(a)(1) because neither Defendant is a resident of Missouri and under 28 U.S.C. § 1391(a)(3) because this action may otherwise be brought in a Louisiana district court. Plaintiff does not specifically address these statutory provisions as a basis for venue in this Court. Because the Court concludes that venue is proper here under 28 U.S.C. § 1391(a)(2), the Court will not discuss whether venue here is proper under 28 U.S.C. § 1391(a)(1) or 28 U.S.C. § 1391(a)(3).

7

**v. Sky Ranch for Boys, Inc.**, 340 F.3d 558, 563 (8th Cir. 2003). Therefore, for venue determinations under 28 U.S.C. § 1391(a)(2), the Court does not decide "which district among [the] potential forums is the 'best' venue." **Setco Enters., Corp.**, 19 F.3d at 1281; accord **Pecoraro**, 340 F.3d at 563. To resolve the motion to dismiss then, this Court must analyze only whether this judicial district in Missouri has a substantial connection to the claims in the case, without considering either any connection between the Eastern District of Louisiana and the claims or any comparison of this judicial district's connection and the connection of the Eastern District of Louisiana to the claims.

A substantial connection between this Missouri judicial district and the claims exists. The claims arise out of at least four agreements between the parties, three Distribution Agreements and the Personal Guarantee, which were last signed, and therefore, made in Missouri. See **Johnson Heater Corp. v. Deppe**, 86 S.W.3d 114, 119 (Mo. Ct. App. 2002) ("[a] contract is made where the last act necessary to form a binding contract occurs"). Under the three Distribution Agreements and related invoices, Nordyne made the HVAC products in Missouri, shipped them from Missouri, and sent them FOB Missouri. Flick Distributing took title of the HVAC products in Missouri. **House of Lloyd, Inc. v. Director of Revenue**, 824 S.W.2d 914, 923 (Mo. banc 1992) (absent an agreement regarding the passage of title to the contrary, title for products sent "F.O.B. point of shipment, . . . passes at the moment of delivery to the carrier"), overruled on other grounds **Sipco, Inc. v. Director of Revenue**, 875 S.W.2d 539, 541-42 (Mo. banc 1994). Flick Distributing purchased the HVAC products by mailing payments to Missouri in response to invoices Nordyne sent from Missouri. Four of the claims in this lawsuit arise out of Defendants' alleged failure to pay for HVAC products

8

manufactured in and shipped from Missouri under the agreements made in Missouri.[10] The fifth claim presents issues regarding the interpretation of certain provisions of the parties' Missouri agreements, as well as issues regarding whether Missouri or Louisiana law applies to resolve the parties' inventory dispute, which arises out of inventoried HVAC products that were made in and sent from Missouri pursuant to the parties' agreements and the termination of the parties' business relationship.

Defendants argue that the Eastern District of Louisiana is a proper venue for this lawsuit due to both the presence in Louisiana and Mississippi of the large amount of inventory that is the subject of at least one of the claims, and the presence in Louisiana of alleged breaches of the Distribution Agreements and Credit Agreement.[11] While there might be a substantial connection between the

---

[10] Defendants argue the amounts sought in Counts I through IV, which Defendants state totaled $172,247.90, are not "at issue between the parties." (Defs.' Mem. Supp. Mot. Dismiss or Transfer at 3 n.2, 4-5, 11 [Doc. 17].) Defendants urge they expected Nordyne to offset those amounts against the inventory amount. (Id.) After Nordyne filed this lawsuit, Defendants report, Defendants paid and Nordyne accepted payment of that amount. (Id.) Therefore, Defendants contend, "the allegations in those Counts regarding forum selection clauses have no bearing on the venue and transfer issues associated with the $1.4 million inventory buy-back dispute that is the subject of this motion" (id. at 3 n.2), and Defendants now "owe nothing to Nordyne" (id. at 5). Plaintiff has not expressly responded to this argument.

The parties also dispute the extent to which HVAC products under the Gibson and Mammoth Agreements are at issue in this case. (See id. at 5; Flick Aff. ¶ 8 [Doc. 17-1]; Pl.'s Mem. Oppos. Defs.' Mot. Dismiss or Transfer at 7, 8-9 [Doc. 26]; Defs.' Reply at 3 and 3 n.1 [Doc. 32].)

The Court will not address these arguments at this time because they require consideration of the merits of the claims, for instance, whether or not any amounts are due under the breach of contract claims, and the merits are not now before the Court. Because the Court is not deciding whether the breach of contract claims are resolved, the Court will also not further consider Defendants' arguments based on their position that this is, in essence or only, a declaratory judgment action. (See Defs.' Mem. Supp. Mot. Dismiss or Transfer at 9-12 [Doc. 17].)

[11] Defendants also urge, based on averments in paragraph 3 of Flick's affidavit, that "the sales of the property at issue in this dispute took place in Louisiana." (Defs.' Mem. Supp. Mot. Dismiss or Transfer at 3 n.2 [Doc. 17].) That affidavit paragraph, however, addresses Flick Distributing's sales of the HVAC products in Mississippi and Louisiana, which are not the focus of this lawsuit, and

claims in this case and the Eastern District of Louisiana, that does not foreclose a conclusion that venue in this judicial district is proper under 28 U.S.C. § 1391(a)(2) because the Court has found that a substantial connection between this judicial district and the claims filed by Nordyne exists. **Setco Enters. Corp.**, 19 F.3d at 1281); accord **Pecoraro**, 340 F.3d at 563.

Due to the substantial connection between this judicial district and the claims in this lawsuit, venue in this judicial district is proper under 28 U.S.C. § 1391(a)(2) and the motion to dismiss is denied.

Alternatively, Defendants move to transfer this case to the Eastern District of Louisiana under 28 U.S.C. § 1404(a).

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). It is undisputed that this action could have been filed in the Eastern District of Louisiana.

"The statutory language [of § 1404(a)] reveals three general categories of factors that courts *must* consider when deciding a motion to transfer: (1) the convenience of the parties, (2) the convenience of the witnesses, and (3) the interests of justice." **Terra Int'l, Inc. v. Mississippi Chem. Corp.**, 119 F.3d 688, 691 (8th Cir. 1997) (emphasis added). A district court's evaluation of a motion to transfer is not limited, however, to these three factors. **Id**. A district court has the discretion "to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" **Stewart Org., Inc. v. Ricoh Corp.** 487 U.S. 22, 29

---

does not address the sales of the HVAC products between Plaintiff and Defendants that are the subject of this lawsuit.

(1988) (quoting Van Dusen v. Barrack, 376 U.S. 612, 622 (1964)).

"[T]he presence of a forum selection clause . . . will be a significant factor that figures centrally in the district court's calculus." **Id.** See also **Terra Int'l Inc.**, 119 F.3d at 695 (finding an applicable forum selection clause may be a "very important" factor "in the overall transfer analysis"). Although a forum selection clause is not dispositive, **Stewart Org., Inc.**, 487 U.S. at 31, it is enforceable "'unless it is invalid or enforcement would be unreasonable or unjust,'" **Marano Enters. of Kansas v. Z-Teca Rests., L.P.**, 254 F.3d 753, 757 (8th Cir. 2001) (quoting Dominium Austin Partners v. Emerson, 248 F.3d 720, 726 (8th Cir. 2001)). For example, the enforcement of a forum selection clause would be unjust "'if the *inclusion of that clause in the contract* was a product of fraud or coercion.'" **Id.** (quoting Scherk v. Alberto-Culver Co., 417 U.S. 506, 519 n. 14 (1974)). On the other hand,

> [s]ince it may be assumed that parties consider the inconvenience of the forum at the time they enter a contract, it is "incumbent on the party seeking to escape his contract to show that [proceeding] in the contractual forum will be so gravely difficult and inconvenient that he will for all practical purposes be deprived of his day in court."

**Dominium Austin Partners**, 248 F.3d at 727 (quoting M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 18 (1972)) (second alteration in original). A litigant does not establish that it will be deprived of its day in court by showing it will incur a higher expense to litigate in the forum chosen by the forum selection clause. **Servewell Plumbing, LLC v. Federal Ins. Co.**, 439 F.3d 786, 790 (8th Cir. 2006). Nor does difficulty in obtaining the presence of witnesses in the selected forum establish that a litigant will be deprived of its day in court in the absence of an explanation of how the taking and introduction at trial of the witnesses' depositions would be inadequate. See **Paramont Props., LLC v. La Salle Bank Nat'l Ass'n**, No. 4:08CV0193 MLM, 2008 WL 948284, at *4 (E.D. Mo. Apr. 4,

11

2008).

There are no allegations of fraud or coercion in the instant action. Nor are there any contentions that the forum selection clause is invalid. Additionally, any contention that its enforcement would be unreasonable or unjust is based on general arguments that litigating here would be more costly and may be difficult for witnesses, neither of which establish Defendants will be deprived of their day in court if this case is litigated here. Consequently, the Court will consider the identical forum selection clauses in the Gibson Agreement (Brandt Dec. Ex. 1 § XVII [Doc. 28-1]) and in the Mammoth Agreement (Brandt Dec. Ex. 3 [Doc. 28-3]), as an "important" factor in the consideration of Defendants' § 1404(a) motion.

When exercising its discretion, the Court is mindful that it is well established that the party seeking a transfer bears the burden of proving that a transfer is warranted.[12] See **Terra Int'l, Inc.**, 119 F.3d at 695; **Anheuser-Busch, Inc. v. All Sports Arena Amusement, Inc.**, 244 F. Supp.2d 1015, 1022 (E.D. Mo. 2002). "[Section] 1404(a) operates on the premise that the plaintiff has properly exercised his venue privilege." **Van Dusen v. Barrack**, 376 U.S. 612, 634 (1964). See also **Anheuser-Busch, Inc. v. City Merch.**, 176 F. Supp.2d 951, 959 (E.D. Mo. 2001) ("In considering a § 1404(a) motion, the Court must give great weight to the plaintiff's choice of a proper venue") (Anheuser-Busch, Inc.). "There is nothing . . . in the language or policy of § 1404(a) to justify its use

---

[12] "In general, federal courts give considerable deference to a plaintiff's choice of forum and, thus, the party seeking a transfer under § 1404(a) typically bears the burden of proving that a transfer is warranted." **Terra Int'l, Inc. v. Mississippi Chem. Corp.**, 119 F.3d 688, 695 (8th Cir. 1997). The United States Court of Appeals for the Eighth Circuit in that case did not resolve the question whether a forum selection clause shifted the burden of proof to the party resisting the enforcement of the clause. **Id.** at 696. Such a shift in this case would keep the burden on the parties seeking transfer, the Defendants, because a transfer would be to a court other than this Court which is a forum designated in the Gibson and Mammoth Agreements' forum selection clauses.

by defendants to defeat the advantages accruing to plaintiffs who have chosen a forum which, although it was inconvenient, was a proper venue." **Van Dusen**, 376 U.S. at 633-34. "When plaintiff and defendant are in different states there is no choice of forum that will avoid imposing inconvenience; and when the inconvenience of the alternative venues is comparable there is no basis for a change of venue; the tie is awarded to the plaintiff . . . ." **In re Nat'l Presto Indus., Inc.**, 347 F.3d 662, 665 (7th Cir. 2003). "[Section] 1404(a) provides for transfer 'to a more convenient forum, not to a forum likely to prove equally convenient or inconvenient.'" **American Standard, Inc. v. Bendix Corp.**, 487 F. Supp. 254, 261 (W.D. Mo. 1980) (quoting Van Dusen, 376 U.S. at 645-46). Here, it is clear that this judicial district is a proper venue for this lawsuit.

Convenience of Witnesses. "[T]he most important factor in passing on a motion to transfer under [28 U.S.C. §] 1404(a) . . . is the convenience of the witnesses." 15 Charles Alan Wright, Arthur R. Miller, & Edward H. Cooper, Federal Practice and Procedure § 3851 (3rd ed. 2007). See also **Anheuser-Busch, Inc.**, 176 F. Supp.2d at 959 ("The primary, if not most important of [the § 1404(a) factors] is the convenience of the witnesses") (internal quotation marks omitted) (quoting May Dept. Stores Co. v. Wilansky, 900 F. Supp. 1154, 1165 (E.D. Mo. 1995)); **American Standard, Inc.**, 487 F. Supp. at 262 (holding to same effect). The witnesses to be considered, however, must be "substantially part of the case itself . . . ." **Wilson v. Ohio River Co.**, 234 F. Supp. 283, 285 (W. D. Pa. 1964). This factor does not weigh in favor of transfer.

Plaintiff Nordyne states that there are six witnesses in this judicial district and a nearby Illinois area who will testify at trial, and has provided brief statements of those witnesses' testimony. While Defendants mention "[t]he vast majority of the witnesses expected to be called in this action reside in Louisiana," (Defs.' Mem. Supp. Mot. Dismiss or Transfer at 4 [Doc. 17]), Defendants have

13

specifically identified only two potential witnesses, Defendant Flick and another person who has helped with Flick Distributing's business, both of whom live in Louisiana (Flick Aff. ¶ 11 [Doc. 17-1]). Notably, the "sheer numbers of witnesses will not decide which way the [witness] convenience factor tips." **Terra Int'l, Inc.**, 119 F.3d at 696 (internal quotation marks and citation omitted). Yet Defendants have not provided a statement of what any of their witnesses' testimony will be. See **American Standard, Inc.**, 487 F. Supp. at 262 ("if the party moving for transfer under § 1404(a) merely makes a general allegation that witnesses will be necessary, without identifying those necessary witnesses and indicating what their testimony at trial will be, the motion for transfer based on convenience of witnesses will be denied.") Additionally, Defendants have not shown how the taking and introduction of depositions of any witness(es) would adversely affect their litigation of this lawsuit in Missouri.

Moreover, moving the case to Louisiana would create a convenience for Defendants Flick and Flick Distributing, and an inconvenience for Plaintiff Nordyne. One side's witnesses will be inconvenienced by either choice of venue. "'Merely shifting the inconvenience from one side to the other . . . obviously is not a permissible justification for a change of venue.'" **Terra Int'l Inc.**, 119 F.3d at 696-97 (quoting Scheidt v. Klein, 956 F.2d 963, 966 (10th Cir. 1992)).

Convenience of the Parties. Defendants state that Nordyne is "an international corporation with facilities in Florida, Tennessee, Missouri, and Mexico," and Flick Distributing is a small company with offices only in "the gulf south region." (Defs.' Mem. Supp. Mot. Dismiss or Transfer at 6-7 [Doc. 17].) Additionally, Defendants urge they will be "highly inconvenienced" (id. at 7) by litigating the case in Missouri due to the presence in Louisiana of relevant documents and witnesses, and the presence of the inventory in Louisiana and Mississippi.

Plaintiff first points out that the documentation "will be photocopied and produced during discovery," making its physical location irrelevant. (Pl.'s Mem. Oppos. Defs.' Mot. Dismiss or Transfer at 12 [Doc. 26].) Next, Plaintiff notes the case centers on contract and statutory interpretation, not on any alleged defect or condition of the product, so the location of the inventory is also not relevant.

The Court finds that the location of the documents and inventory outside of Missouri does not make this judicial district sufficiently inconvenient to Defendants to support transfer of the case to Louisiana. To the extent this factor also addresses the location of the challenged conduct, **Terra Int'l, Inc.**, 119 F.3d at 696, it appears that the conduct challenged in this lawsuit may have occurred in Louisiana and in Missouri.

As noted earlier, a shift in venue would work an equal inconvenience and expense on Plaintiff, because Plaintiff lacks property, offices, and employees in Louisiana. A mere shift in the inconvenience of the parties is not sufficient to grant transfer. See **Amerilink Corp. v. Cerco, Inc.**, 4:95CV1498 DJS, 1996 WL 238525, at *3 (E.D. Mo. May 3,1996); see also **Terra Int'l Inc.**, 119 F.3d at 696-97.

Accordingly, consideration of this factor does not favor transfer.

<u>Interests of Justice.</u> Included in this factor are such considerations as "judicial economy," "the plaintiff's choice of forum," "the comparative costs to the parties in litigating in each forum," "obstacles to a fair trial," and "the advantages of having a local court determine questions of local law." **Terra Int'l, Inc.**, 119 F.3d at 696. Accord **Jones v. GNC Franchising, Inc.,** 211 F.3d 495, 498-99 (9th Cir. 2000); **Anheuser-Busch, Inc.**, 176 F. Supp.2d at 959 (considerations include the availability of judicial process to compel testimony from hostile witnesses, the governing law, the

relative ease of access to sources of proof, the possibility of delay and prejudice if a transfer is granted, and the practical considerations of cost and efficiency); **American Standard, Inc.**, 487 F. Supp. at 264.

Consideration of these factors does not favor transfer. Due to the parties' agreement regarding resolution of the claims in this action or the Louisiana action based on the disposition of Defendants' motion to dismiss or transfer, judicial economy is not affected by the location of the litigation. Plaintiff chose a Missouri forum in accordance with the forum selection clauses in at least two of the parties' agreements that are the subject of the pending claims. The forum selection clauses support the venue of this judicial district. Considerations of costs and efficiency, as discussed earlier, appear to favor equally the Eastern District of Louisiana and this judicial district. No party has argued either that a hostile witness will be called or that a hostile witness will not be able to appear due to the location of the litigation. Consideration of the ease of access to the sources of proof favors neither party as both locations will have access to the sources of proof on the contract claims and declaratory judgment claim. Furthermore, the motion to transfer was made early in the litigation; thus, a transfer would not cause a delay in the proceedings.

Additionally, there is no obstacle to obtaining a fair trial here. While Nordyne is a Missouri corporation, there is no contention that either Flick or Flick Distributing may not obtain a fair trial in this judicial district. Indeed, Flick's affidavit focuses on the inconvenience to him and Flick Distributing should the case not be transferred to Louisiana. As discussed above, without more this consideration does not outweigh Plaintiff Nordyne's choice of forum.

Furthermore, any issues of Missouri and Louisiana law applicable to the breach of contract claims and declaratory judgment claim do not favor transfer. Missouri law applies in this case upon

16

transfer under 28 U.S.C. § 1404(a).  **Eggleton v. Plasser & Theurer Export Von Bahnbaumaschinen Gesellschaft, MBH**, 495 F.3d 582, 585-86 (8th Cir. 2007) (for § 1404(a) transfers, the transferee court applies the choice-of-law rules of the state where the transferor court sits); **Wisland v. Admiral Beverage Corp.**, 119 F.3d 733, 736 (8th Cir. 1997) (the law of the transferor court applies upon transfer under § 1404(a)).  Neither party contends the Louisiana court would be unable to interpret and apply Missouri law.  To the extent Louisiana law applies, this Court is accustomed to presiding over diversity actions in which the interpretation of state law other than Missouri is required.  Just as the Eastern District of Louisiana would be capable of applying Missouri law to the pertinent claims, this Court is capable of applying Louisiana law to the pertinent claims.  Neither party gains an advantage in the consideration of local law.

Having considered the relevant factors under 28 U.S.C. § 1404(a), including the forum selection clause in at least two of the parties' Distribution Agreements, and the weight to be given Plaintiff's choice of forum, the motion to transfer the case to the Eastern District of Louisiana is denied.

Accordingly,

**IT IS HEREBY ORDERED** that the motion of Thomas Flick and Flick Distributing to dismiss for improper venue and/or for transfer of venue to the United States District Court for the Eastern District of Louisiana is **DENIED** [Doc. 16].

**IT IS FURTHER ORDERED** that Defendants' motion for oral argument on their motion to dismiss for improper venue and/or for transfer of venue is **DENIED** as moot [Doc. 34].

/s/ Thomas C. Mummert, III  
THOMAS C. MUMMERT, III  
UNITED STATES MAGISTRATE JUDGE

Dated this 28th of May, 2009.